JOHN CHASE LEE, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 21556–11L.          Filed January 21, 2015.

R filed an NFTL and sent P a notice of lien filing and a
notice of intent to levy with respect to trust fund recovery
penalties assessed against P for all periods of 2007 and 2008.
P requested a CDP hearing pursuant to I.R.C. secs. 6320 and
6330. In the notice of determination sent to P after the

40

hearing the Appeals Officer sustained R's filing of the NFTL and the proposed levy. P petitioned this Court for review. After a supplemental hearing on remand, R determined in a supplemental notice of determination that P could not challenge the underlying tax liabilities because he had previously had an opportunity to do so in response to a Letter 1153. Because R did not mail the Letter 1153 to P's last known address, R was required to serve Letter 1153 on P personally in order for the assessment to be valid. P contends that the Letter 1153 was never served on him. Before the Court is R's motion for summary judgment in which R contends that there are no disputed issues of material fact. *Held*: R's motion for summary judgment will be denied because the issue of whether the Letter 1153 was properly issued to P by personal service remains a genuine dispute as to a material fact for trial. *Held*, *further*, the issue of whether a Letter 1153 has been properly issued to a taxpayer by mailing or by personal service pursuant to I.R.C. secs. 6672 and 6212(b) is a requirement of applicable law or administrative procedure that this Court will review pursuant to I.R.C. sec. 6330(c)(1) without regard to whether P raised the issue at the CDP hearing.

John Chase Lee, pro se.
*Wendy Dawn Gardner*, for respondent.

OPINION

WELLS, *Judge*: Petitioner seeks review pursuant to sections 6330 and 6320 of respondent's determination to uphold a notice of Federal tax lien (NFTL) filing and a notice of intent to levy for section 6672 trust fund recovery penalties (trust fund recovery penalties).[1] The instant case is before the Court on respondent's motion for summary judgment pursuant to Rule 121 contending that there are no disputed issues of material fact and that the NFTL and the proposed levy should be sustained as a matter of law. Respondent filed, pursuant to Rule 121(d), a declaration of the settlement officer with attachments that constitute the hearing record. Petitioner, who is appearing pro se, did not submit a declaration but makes statements in his response filed in opposition to respondent's motion. The parties' moving papers form the basis of the facts we rely upon to decide respondent's motion.

_____

[1] Unless otherwise indicated, section and Internal Revenue Code references are to the Internal Revenue Code of 1986, as amended and as in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent contends that petitioner was personally served with a Letter 1153, Proposed Assessment of Trust Fund Recovery Penalty (Letter 1153) by respondent's revenue officer.[2] Petitioner contends that the Letter 1153 was never served on him and that he should not be liable for the underlying trust fund recovery penalties. We must decide whether respondent is entitled to summary judgment. In reaching our decision, we must decide whether the requirements of any applicable law and administrative procedure have been met.

## *Background*

At the time the petition was filed petitioner resided in Piscataway, New Jersey.

Since 2005 petitioner has intermittently been the CEO of Wi-Tron, Inc. (Wi-Tron). For every quarter during 2007 and 2008 Wi-Tron incurred employment tax liabilities. During a meeting with petitioner on December 18, 2009, the revenue officer in charge of collecting Wi-Tron's employment taxes requested a "4180 interview" (4180 interview)[3] with both petitioner and Tarlochan Bains, the chief operating officer of Wi-Tron. Petitioner refused the revenue officer's 4180 interview request because he wanted to seek legal counsel. Before concluding the meeting the revenue officer advised that he would be making his determination of trust fund recovery penalties "shortly" and would mail any proposed assessments. Respondent does not contend and has not provided any evidence that a 4180 interview was ever held with petitioner. Proposed assessments of the trust fund recovery penalties against petitioner were not mailed to petitioner.

On March 30, 2010, the revenue officer, his manager, petitioner, and Mr. Bains met in person. Respondent contends that at the meeting the revenue officer hand delivered to petitioner a Letter 1153 proposing assessment of the trust fund recovery penalties against petitioner and providing an

---

[2] Respondent does not contend that the Letter 1153 was properly sent to petitioner by mail pursuant to secs. 6672 and 6212(b).

[3] The purpose of a 4180 interview is to determine whether an individual is responsible for paying an entity's employment taxes (responsible person). The determination that an individual is a responsible person is a prerequisite for the Commissioner to assess trust fund recovery penalties pursuant to sec. 6672, which permits recovery of the employment tax liabilities from the responsible person's assets.

opportunity for petitioner to challenge the assessment before an Appeals officer. The Integrated Collection System History Transcript (ICS Transcript) that respondent submitted with the declaration shows a March 30, 2010, entry which does not refer to the Letter 1153. Instead, an entry on March 31, 2010, the day after the meeting, states: "In addition to GM entry above * * * both Bains and Lee were personally served 1153". Petitioner did not request an appeal to challenge the proposed assessment of the trust fund recovery penalties. On July 14, 2010, the trust fund recovery penalties were assessed against petitioner for all periods of 2007 and 2008.

On August 12, 2010, respondent issued a Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing to petitioner for the penalties. On August 24, 2010, respondent also issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for all of the trust fund recovery penalties. On September 3, 2010, petitioner submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, requesting a hearing.

Petitioner's appeal was assigned to Settlement Officer Charlette Jacobi (SO Jacobi). Beginning in October 2010 petitioner and SO Jacobi corresponded and spoke regularly about petitioner's individual and business finances. They exchanged substantial information, including petitioner's offer-in-compromise. Another item discussed was whether respondent had incorrectly applied a September 3, 2010, payment of $10,000 toward the non-trust-fund portion of Wi-Tron's employment taxes. After several months of reviewing and updating financial information, SO Jacobi issued the notice of determination sustaining the collection action because petitioner was not current with his estimated tax payments. The notice of determination did not address the application of the $10,000 payment.

In his petition, petitioner states that the failure to pay the underlying employment taxes in issue arose because of the "absense [sic] of * * * [Mr. Bains] who took care of taxes * * * due to his ill health with 3 stents". On August 1, 2012, respondent moved for summary judgment and contended, among other things, that petitioner had not challenged the underlying liabilities in Form 12153 or the petition. In his response to the motion for summary judgment petitioner explicitly contended that he was not responsible for the

employment taxes and that the $10,000 payment issue was not properly resolved.

On March 4, 2013, the Court remanded the instant case and ordered petitioner and respondent to hold a supplemental hearing for the purpose of reviewing: (1) whether petitioner received a notice of intent to assess the trust fund recovery penalties, (2) whether petitioner was allowed the opportunity to challenge the assessment, and, if not, to allow him the opportunity to do so, and (3) whether petitioner's payment of $10,000 on September 3, 2010, was properly applied to the employment taxes.

On May 29, 2013, petitioner and Settlement Officer Lisa Wold (SO Wold) held the supplemental hearing. In anticipation of the supplemental hearing, SO Wold requested from the revenue officer a copy of the $10,000 check dated September 3, 2010. The revenue officer had not retained a copy of the check and had not noted in the ICS Transcript whether the payment was designated for the non-trust-fund portion of the employment taxes. Petitioner provided a copy of the canceled check, and SO Wold "observed that there was a hand-written statement on the check to apply the payment to trust funds." On the basis of the evidence petitioner provided, SO Wold agreed to apply the $10,000 payment toward the trust funds owed by Wi-Tron.

SO Wold also requested from the revenue officer verification that petitioner had received the Letter 1153. The revenue officer provided the ICS Transcript stating that petitioner had been personally served with the Letter 1153 on March 30, 2010. The revenue officer also faxed an unsigned copy of a Letter 1153 dated March 30, 2010, and addressed to petitioner. SO Wold determined that petitioner had received the Letter 1153, that the Letter 1153 had afforded petitioner appeal rights which he failed to exercise, and that petitioner therefore could not raise at the supplemental hearing the underlying liabilities for the trust fund recovery penalties assessed against him.

In his August 14, 2013 status report following the hearing, petitioner continues to contest the assessment of the trust fund recovery penalties. Petitioner contends he informed the revenue officer both orally and in writing that he "had little to do with payroll or payroll tax matters" and that there is "ample evidence" that the COO, Mr. Bains, took care of the

payroll and payroll tax matters. In his opposition to respondent's motion petitioner provides details about what he remembers from the March 30, 2010, meeting and contends that, if the Letter 1153 had been presented to him, he would have noticed it. Petitioner contends that respondent's collections file should show that, since he was made aware of Wi-Tron's employment tax liabilities, he has "religiously" responded by filing all requested forms.

## *Discussion*

### A. *Summary Judgment*

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b); *see Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994); *Zaentz v. Commissioner*, 90 T.C. 753, 754 (1988); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985).

The moving party bears the burden of proving that there is no genuine dispute of material fact; all factual inferences will be read in the light most favorable to the nonmoving party. *Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985); *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982). Nonetheless, the nonmoving party is required "to go beyond the pleadings and by" his "own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)); *see Rauenhorst v. Commissioner*, 119 T.C. 157, 175 (2002); *FPL Grp., Inc. & Subs. v. Commissioner*, 115 T.C. 554, 559–560 (2000). The nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp.*, 477 U.S. at 324.

B. *Trust Fund Recovery Penalty*

 Section 6672 provides in part as follows:

> SEC. 6672(a). GENERAL RULE.—Any person required to collect, truth-fully account for, and pay over any tax imposed by this title who will-fully fails to collect such tax, or truthfully account for and pay over such tax * * * shall * * * be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. * * *

Thus, section 6672 aids in the collection of the Federal Insurance Contributions Act tax and income tax an employer is required to withhold from employees' wages and remit to the Internal Revenue Service (Service). In *Weber v. Commissioner*, 138 T.C. 348, 357–359 (2012), and *Dinino v. Commissioner*, T.C. Memo. 2009–284, 2009 WL 4723652, at *4, we set forth the trust fund recovery penalty scheme in great detail. The withheld amounts are known as "trust fund taxes" because they are held by the employer in trust for the Service until the amounts are remitted. *Id.* As explained in *Dinino*, employers facing financial difficulties may sometimes be tempted to use these trust funds for other expenses. *Id.* If the employer does not remit the trust fund taxes, the Service nevertheless gives credit to the employees on their tax returns for the amounts withheld. *Id.* The risk is therefore that employers fail to pay the past-due trust fund taxes while the Service credits employees with funds never received. *Id.*

 To discourage misuse of the trust fund taxes and to aid in their collection, section 6672(a) imposes, as noted above, "a penalty equal to the total amount of the tax * * * not accounted for and paid over" to the Service. Trust fund recovery penalties may be imposed on any person who meets two requirements. The first requirement is that the person must be what is referred to in the caselaw as a "responsible person", that is, a "person required to collect, truthfully account for, and pay over" employment taxes. Sec. 6672(a). The second requirement is that the responsible person must have "willfully fail[ed] to collect * * * truthfully account for, and pay over" the employment taxes. *Id.*; *see Slodov v. United States*, 436 U.S. 238 (1978).

 Although the Service must give the responsible person notice of the proposed assessment of the trust fund recovery

penalty at least 60 days before assessing the penalty, *see* sec. 6672(b), the Service does not issue a notice of deficiency for a section 6672(a) penalty, *see Dinino v. Commissioner*, 2009 WL 4723652, at \*4; *see also Wilt v. Commissioner*, 60 T.C. 977, 978 (1973). That is because the deficiency notice requirements in sections 6212(a) and 6213(a) are limited to the taxes imposed by subtitle A (income taxes), subtitle B (estate and gift taxes), and chapters 41 through 44 (excise taxes). *See Dinino v. Commissioner*, 2009 WL 4723652, at \*4. The trust fund recovery penalty is imposed by section 6672 (which appears in subtitle F) with respect to employment taxes imposed by subtitle C. *Id.* Accordingly, when providing the notice required by section 6672(b)(1), the Service instead issues Letter 1153 for the purpose of such notice.[4] *Mason v. Commissioner*, 132 T.C. 301, 317 (2009). To provide for proper notice of the assessment of trust fund penalties, section 6672 refers to the section 6212(b) instructions that provide for a properly mailed notice of deficiency. Sec. 6672(b); *see Mason v. Commissioner*, 132 T.C. at 317. Alternatively, section 6672 allows the Service to personally serve the notice upon the responsible person. Sec. 6672(b)(1). Accordingly, in order for the Service to properly assess trust fund recovery penalties, the Letter 1153 must be either mailed to the responsible person in the same manner as a notice of deficiency that determines taxes due under subtitle A or B or personally delivered to the responsible person.

In the instant case, the revenue officer determined that petitioner was a responsible person who had willfully failed to pay over employment taxes. Respondent contends that the revenue officer personally served petitioner with the Letter 1153 at the meeting on March 30, 2010. After 106 days, during which petitioner did not file an appeal, respondent assessed the trust fund recovery penalties in issue. *See* sec. 6672(b)(2).

---

[4] As previously stated, the Letter 1153 also provides an opportunity for responsible persons to request an Appeals hearing for the purpose of challenging the proposed trust fund recovery penalty assessment. *Mason v. Commissioner*, 132 T.C. 301, 317 (2009).

C. *Collection Due Process*

Section 6330 requires that, before levying on a taxpayer's property or right to property, the Service give the taxpayer notice and the right to a fair hearing with an impartial officer of the Appeals Office. Sec. 6330(a) and (b). Similarly, the Service must notify a taxpayer of the right to request an Appeals hearing within five days of filing an NFTL. Sec. 6320(a)(1), (3)(B), (b)(1). At the hearing, the Appeals officer must make his or her determination on the three bases described below. Secs. 6320(c), 6330(c)(3).

The Appeals officer must verify that any requirements of applicable law and administrative procedure have been met. Sec. 6330(c)(1). In a hearing held pursuant to section 6330 to collect trust fund recovery penalties, the basic requirements the Appeals officer must verify include: (1) the Service's proper assessment of the trust fund recovery penalties, *see, e.g.*, secs. 6201(a)(1), 6672(b); (2) the responsible person's failure to pay the liability after notice and demand for payment of the liability, *see* secs. 6303, 6321, 6331(a); and (3) the Service's notice to the responsible person of the NFTL or the intent to levy, *see* secs. 6320(a)(1), 6330(a)(1), 6331(d)(1), and of the responsible person's right to a hearing, *see* secs. 6320(a)(3)(B), 6330(a)(3)(B), 6331(d)(4)(C); *see also Dinino v. Commissioner*, 2009 WL 4723652, at *7.

Generally, in a hearing involving the collection of trust fund recovery penalties, the Appeals officer must consider any relevant issues raised by the responsible person, such as a collection alternative. Sec. 6330(c)(2). One relevant issue a responsible person may raise at the hearing is a challenge to the underlying trust fund recovery penalties, but only if he or she "did not receive any statutory notice of * * * [the penalty] or did not otherwise have an opportunity to dispute such * * * [penalty]." Sec. 6330(c)(2)(B). Whether a responsible person had an opportunity to dispute the trust fund recovery penalty is distinct from whether the Service issued proper notice under section 6672, i.e., by properly issuing a Letter 1153. *See, e.g.*, *Mason v. Commissioner*, 132 T.C. 301 (finding that the Service provided proper section 6672(b) notice by properly mailing the Letter 1153 but also that, since the Letter 1153 was not received or deliberately refused

by the responsible person, it did not constitute an opportunity to dispute the trust fund recovery penalty).

Moreover, the Appeals officer must balance the need for the efficient collection of taxes with the concern that collection action be no more intrusive than necessary. Sec. 6330(c)(3)(C). This Court has jurisdiction with respect to the Appeals officer's determination. Sec. 6330(d)(1); *see Sego v. Commissioner*, 114 T.C. 604 (2000).

### D. *Verification That All Requirements of Applicable Law and Administrative Procedure Have Been Met*

As discussed above, assessment of the trust fund recovery penalties in the instant case requires prior notice to petitioner. Sec. 6672(b). Because the Service uses Letter 1153 to provide the required notice, the proper issuance of the Letter 1153 to petitioner is a requirement of law and administrative procedure whose execution the Appeals officer must verify. *See* sec. 6330(c)(1); *Dinino v. Commissioner*, 2009 WL 4723652, at *8. As we stated in *Dinino*, pursuant to our holding in *Hoyle v. Commissioner*, 131 T.C. 197 (2008), this Court will review any verification issue even if the taxpayer did not raise the issue at the hearing. *See* sec. 6330(c)(2)(B); *Dinino v. Commissioner*, 2009 WL 4723652, at *7–*8. In *Hoyle*, the taxpayer asserted that the Service had failed to properly mail a notice of deficiency before assessing the income tax in issue. *Hoyle v. Commissioner*, 131 T.C. at 200. In *Hoyle*, following the rule in *Giamelli v. Commissioner*, 129 T.C. 107 (2007), the Commissioner argued that the taxpayer could not raise the issue of receipt of the notice of deficiency because the taxpayer had not raised it at the hearing. *Hoyle v. Commissioner*, 131 T.C. at 200.

The Court explained in *Hoyle* that the *Giamelli* rule, which prohibits taxpayers from raising in Court any issues not raised at the hearing, applies only to "any relevant issue relating to the unpaid tax" which the taxpayer "may raise" under section 6330(c)(2), not to the verification requirements of section 6330(c)(1). *Hoyle v. Commissioner*, 131 T.C. at 201–202. Section 6330(c)(2) issues such as spousal defenses or collection alternatives cannot be a part of the Appeals officer's determination unless raised by the taxpayer. *Id.* The concern underpinning our holding in *Giamelli* is that liti-

gating new issues in Court without any prior consideration by the Service would frustrate the administrative review process created by section 6330. *Id.* In contrast, the section 6330(c)(1) verification requirements will always form part of the determination because the statute requires their consideration at the hearing regardless of whether the taxpayer raises the issue. *Id.* Because section 6330 requires Appeals officers to independently consider section 6330(c)(1) issues at the hearing, they are not "new" when asserted in Court and there is no danger of frustrating the administrative review process. *Id.* at 202.

In the instant case, SO Jacobi and SO Wold were obligated to verify during the Appeals hearing that respondent had met all "requirements of any applicable law or administrative procedure" for collecting the trust fund recovery penalties. Proper notice under section 6672(b) is one such requirement for assessing, and therefore collecting, the trust fund recovery penalties against petitioner. Accordingly, the proper issuance of the Letter 1153 to petitioner should have been considered in SO Jacobi's original determination. *See Hoyle v. Commissioner*, 131 T.C. at 202; *Dinino v. Commissioner*, 2009 WL 4723652, at *4. Indeed, SO Wold considered the issuance of a Letter 1153 to petitioner and addressed its delivery in the supplemental notice of determination by stating that it was delivered to petitioner. Consequently, petitioner's argument is not "new", and there is no danger of frustrating the administrative review process by considering it.

However, we conclude that the issue of whether petitioner received the Letter 1153 presents a genuine dispute of material fact that remains to be tried. Petitioner contends that he did not receive the Letter 1153. Petitioner states specific facts about the March 30, 2010, meeting in support of his contention. Additionally, petitioner contends that he has a history of diligently replying to respondent's correspondence, a contention for which we find some support in the record.

We conclude that the record is not sufficient for us to decide that the Letter 1153 was served on petitioner. For example, respondent has not provided the Court with a copy of the Letter 1153 that respondent contends was personally delivered to petitioner. Nor has respondent provided a statement, under oath, by the revenue officer, that he personally

served the Letter 1153 on petitioner on March 30, 2010. Instead, the record contains only a copy of the ICS Transcript entry on March 31, 2010, the day after the meeting was held, stating that the Letter 1153 had been previously served on petitioner at the meeting. Indeed, the entry on March 30, 2010, the date of the actual meeting, contains no statement regarding the personal delivery of the Letter 1153 to petitioner. Moreover, neither entry, on either date, identifies the person who respondent contends delivered the Letter 1153 to petitioner. Respondent, therefore, has failed to meet his burden of showing that summary adjudication is warranted, and a trial will be necessary to establish the facts concerning the issue of personal delivery of the Letter 1153 to petitioner.[5] Accordingly, we will deny respondent's motion for summary judgment.[6]

To reflect the foregoing,

*An appropriate order will be issued.*

---

[5] As stated *supra* note 2, respondent does not contend the Letter 1153 was mailed to petitioner.

[6] The parties have raised additional issues in their motion papers that we will decide after trial. This Opinion focuses on the issue of whether there was proper service of the notice of the assessment of trust fund recovery penalties under sec. 6672.